### SWARTWOUT v. SKINNER.

(Court of Appeals of District of Columbia. Submitted January 17, 1923. Decided April 3, 1923.)

No. 1562.

1. **Patents** ⊙⟹106(2)—**Prior inventor held entitled to make claim calling for universal joint.**

Where the prior inventor stated in his specification that a ball and socket joint could be substituted for the joint shown, which he was required to strike from the specification, because the construction was not illustrated, but the substitution of that joint for his construction would occur to a mechanic skilled in the art, if the particular construction shown was inoperative, he was entitled to make a count in interference which called for a universal joint.

2. **Patents** ⊙⟹106(2)—**Objections to prior inventor's construction as not operative held untenable.**

An objection that the construction disclosed by the prior inventor was not operative, because the expansion of the cylinder would interfere with the timing of the valve, was not tenable, where the particular method of construction to avoid that effect was not claimed in the counts in interference, and the effect of the expansion would be practically negligible.

Appeal from the Commissioner of Patents.

Interference proceeding between Everett W. Swartwout and Le Grand Skinner. From a decision awarding priority to Skinner, Swartwout appeals. Reversed, and priority awarded Swartwout.

Henry J. Lucke, of New York City, and Robert Watson, of Washington, D. C., for appellant.

H. C. Lord, of Erie, Pa., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in interference proceeding in which priority of invention was awarded the junior party, Skinner.

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The invention embraces a steam engine valve gear, so designed as not to be affected by expansion and contraction of the cylinder, due to changes in temperature incident to operation of the engine. The claims are three in number, of which we here reproduce the first, as illustrative of the group:

1. In an engine valve gear, the combination of a rocker oscillating on an axis at a right angle to the engine cylinder axis, a lay shaft parallel to the cylinder axis, and connecting means between the rocker and lay shaft, to operate the latter, said means including universal joints permitting variations in relative position between the shaft and rocker, the lay shaft being movable longitudinally relative to the cylinder, whereby expansion of the cylinder will not vary the angular relation of the lay shaft and the rocker."

The Examiner of Interferences, upon evidence warranting the conclusion, found that Swartwout had proven conception of the invention as early as September 6, 1915. His application was filed on August 23, 1916. And since Skinner, in his preliminary statement, alleged conception in December of 1915, and relied upon his filing date of July 20, 1917, for reduction to practice, it is apparent that he could defeat Swartwout only by successfully challenging operativeness of his structure. This he endeavored to do, but the Examiner, in a carefully prepared opinion, ruled against him and awarded priority to Swartwout. The same question was raised before the Examiners in Chief, with the same result.

The Assistant Commissioner ruled against Swartwout on the question of operativeness, and therefore awarded priority to Skinner.

When Skinner filed his motion for dissolution, on the ground of the inoperativeness of the Swartout device, the motion in due course was referred to the Law Examiner, who considered every phase of it. In his opinion he says:

"One point of the motion is that Swartwout has not disclosed means, including 'universal joints,' connecting the rocker arm and lay shaft. It is thought that the specific joints shown in Swartwout's drawing may be called 'universal joints,' but in view of the fact that the original specification stated that ball and socket joints might be substituted for the specific connection shown, whether the joints illustrated are 'universal' becomes unimportant; ball and socket joints are universal joints, within any meaning attributable to these words in Skinner's patent.

"The principal point made in support of the motion rests upon a theory which is not even hinted at in Skinner's specification. It is said that, in order to realize the results aimed at by the invention, the points of connection of the link $E$ with the lay shaft and rocker arm should remain fixed under cylinder expansion, to accomplish which Skinner fixes the lay shaft in the bearing house $J$ at the frame end of the cylinder. Counsel says that if there were any relative motion of the fixed point of the lay shaft and the point of pivotal connection of link $E'$ and rocker arm, the upper end of link $E'$ would move in the arc of a circle around its pivotal point of connection with the rocker arm, thus rotating the lay shaft and disturbing the timing of the valves, and causing unequal distribution of steam. As above indicated, the specification of Skinner fails to describe or suggest where the derangement of prior art devices due to cylinder expansion occurred, and it failed to state that the relation of parts now relied upon was essential to a realization of the invention. On the other hand, it indicates that such realization is dependent principally upon the arrangement of the lay shaft alongside the cylinder, which may move relatively to the

cylinder, and a rocker arm mounted on an axis at right angles thereto, connected to the lay shaft through a link having universal joints. * * *

"Furthermore, since the expansion of the cylinder is said to be only about fifteen-thousandths of an inch, even if the lay shaft were fixed at the outer end of the cylinder, as the specification seems to contemplate as a possible construction, the angular motion of the lay shaft due to the change in radial position of link *E'* under cylinder expansion, would be so very slight that it would apparently not seriously affect the valves. At least it seems reasonable to say that, even if the lay shaft were fixed at the outer end of the cylinder, some of the benefits of the invention would still be realized. This appears to be the theory of Skinner's specification, and it is thought to be correct. From a reading of Skinner's specification it is fair to assume that the fixing of the lay shaft in the frame-end housing is not an essential feature of the invention, and it is significant that none of the claims bring in this feature. It is concluded that the fixing of the lay shaft at any particular point from longitudinal motion is not of the essence of the broad invention."

The Assistant Commissioner rested his decision upon the ground that Swartwout has not disclosed means, including "universal joints," connecting the rocker arm and lay shaft, although he suggested that there might be merit in the other contentions advanced by Skinner.

These are combination claims, and it in effect is conceded by the Assistant Commissioner that the use of such a joint would obviate the defect assumed to reside in the structure described. In his application as filed, Swartwout says:

"A universal connection of suitable construction, such as the ball and socket type, may be substituted for the specific connection shown."

Inasmuch, however, as he had not illustrated this well-known type of universal joint in his drawing, he was required to cancel the allusion thereto in his specification. The case, then, amounts to this: The specification sets forth the various elements of the combination, and the drawing is illustrative of these particular elements; but in his specification the applicant suggests that a connection of a different and well-known type be substituted for the particular element shown in the drawing.

[1] We agree with the Law Examiner, the Examiner of Interferences, and the Examiners in Chief that, in such circumstances, if the particular element illustrated proved unsatisfactory, any skilled mechanic would have experienced no difficulty in adopting the suggestion of the applicant for the substitution of the element mentioned. In other words, the application as originally filed so discloses the invention as to enable any one skilled in the art to understand and practice it, and that is sufficient. Gold v. Gold, 34 App. D. C. 152.

[2] As to the other points suggested by the Assistant Commissioner, we are content to adopt the reasoning and conclusion of the other tribunals of the Patent Office.

The decision, therefore, is reversed, and priority awarded Swartwout. Reversed.